[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated October 20, 1998, the plaintiff husband, Antonio Matos, commenced an action for a dissolution of marriage on the grounds of irretrievable breakdown, seeking joint custody, reasonable rights of visitation, equitable division of family-owned assets and other relief. The defendant wife, Norma Matos, appeared through counsel. Both parties appeared with counsel on November 19, 1999, January 14, 2000 and January 18, 2000 and presented testimony and exhibits. The court after hearing the testimony, reviewing the exhibits and hearing final argument from the parties makes the following findings of fact. CT Page 1744
The plaintiff husband married the defendant wife (whose maiden name was Santos) on July 25, 1966 at Hartford, Connecticut. The plaintiff has resided continuously in the State of Connecticut for one year next preceding the date of the filing of this complaint. All statutory stays have expired. The parties have one minor child born to the wife since the date of the marriage, issue of the marriage: Betsaida Matos born February 16, 1982. No other minor child or children have been born to the defendant wife since the date of the marriage. The court further finds that no state or municipal agency is contributing to the support of the parties and/or their minor child.
The plaintiff is 55 years old and has completed the fourth grade of elementary school. The plaintiff had worked at the Mount Sinai Hospital for approximately 30 years and attained the title of manager of the laundry department until the Mount Sinai Hospital merged with St. Francis Hospital and the laundry at Mount Sinai Hospital was closed. The plaintiff commenced employment on July 3, 1995 at St. Francis Hospital as a laundry aide. In addition to his employment as a laundry worker, the plaintiff also worked a second job as a janitor which he quit during the pendency of this action. The plaintiff claimed that he quit his second job due to the stress of the divorce proceeding and the impact that extra work had on his physical well-being. (Defendant's Exhibit X.) The court hereby finds that the defendant quit his extra job as a janitor, not because of any physical problems, but due in part to the stress of the divorce proceedings and his refusal to pay alimony as ordered by Judge Moore on August 17, 1999, after a contested pendente lite hearing. The court finds that the plaintiff is able to work and earn income from both his job as a laundry aide and work as a janitor with an earning capacity including overtime or extra work. He voluntarily quit his extra work to avoid paying the courts pendente lite orders. Hart v. Hart, 19 Conn. App. 91, (1989).
The defendant is 52 years old and has completed elementary school education. The defendant worked during the initial part of the marriage at Connecticut Mutual Insurance as a key punch operator for a period of approximately 5 years. She stopped work to care for family, home and children for approximately 15 years. The defendant returned to the employment market by working as a cashier at J. C. Penney's when she sustained injuries from her employment known as carpal tunnel syndrome resulting in her CT Page 1745 cessation of employment in 1995. Her condition has improved substantially since the date of the surgery. The defendant contended that she could not perform her previous repetitive work involving her hands due to the sequelae from the operation. The record is devoid of any medical testimony and/or exhibits documenting said claim.
Since 1995 the defendant has had surgery for a gynecological problem. She presently complains of high blood pressure and stress and is under the care of a physician. It is important to note that the defendant obtained a job during the pendency of this dissolution of marriage action as a bus driver. She quit this job voluntarily. The defendant provides child care for compensation for her granddaughter, niece and grandson. The defendant has also filed paperwork for a license from the State of Connecticut to operate a day care center at marital home. The court hereby finds that the defendant has a present capacity to work as a babysitter, bus driver, store clerk, maid or janitorial services, etc., at the rate of $365.00 per week gross income. The child support order in this case is based in part upon the earning capacity of the defendant. Hart v. Hart, supra, Lucy v.Lucy, 183 Conn. 230, (1981).
The plaintiff and defendant as previously stated were married on July 25, 1966. They lived in Connecticut for the past 34 years. Their marriage has resulted in the birth of five children, one of whom is still a minor residing at the marital residence with the defendant. The court finds that the marriage was satisfactory to both parties until approximately 10 years ago when the marriage began to break down due to lack of communication between the parties. The plaintiff was working hard at two jobs earning income to support the family. The defendant was home raising her children and caring for and providing all of their non-economic needs. The lack of communication and interaction between the plaintiff and the defendant resulted in the ultimate breakdown of the marital relationship. The defendant went to Florida in 1989 after she had surgery for her gynecological problem and remained there for a period of six months. The plaintiff visited her in Florida while she stayed with her children. The defendant also worked as a housekeeper at a hotel. Their problems increased while she was in Florida in 1989. The plaintiff and defendant could not agree on normal daily life decisions resulting in the plaintiff's further emotional separation from his spouse. The defendant again returned to Florida in 1997 on two separate occasions to assist her daughter, CT Page 1746 Desmeris, while she was pregnant.
Upon return to Connecticut the marital problems escalated resulting in a separation of the parties. The defendant rented an apartment while the plaintiff lived at the marital residence with the minor daughter and his older daughter Desmeris. When the defendant returned to the marital residence, the plaintiff moved to the basement area. The parties have not lived as man and wife since he moved out of the residence in December of 1998. The plaintiff presently resides with his girlfriend in an apartment. He has further refused to pay alimony as ordered by the court pendente lite and is substantially in arrears in alimony, i.e., $2,650.00 with $200.00 owed in back child support.
As a result of the move out of the family residence by the plaintiff and failure to pay the alimony and child support as ordered by the court, the defendant has had to maintain the expenses on the marital residence, including, but not limited to, mortgage, taxes, insurance, utilities, maintenance and upkeep. She relies on financial assistance of her daughter, Desmeris, who pays all of the utilities of the residence including a contribution to the monthly mortgage payment. In addition to assistance from the parties' daughter, the parties son, David, resides in the family residence with his son and provides rent payments to his mother in the amount of $500.00 per month in addition to babysitting payments to his mother in the amount of $25.00 per week. The mother's earned income presently consists of payments for babysitting services through a State subsidized program in the amount of $71.25 per week plus child support received weekly from David. The defendant resides with his girlfriend and pays the expenses of the apartment based on a gross income of $458.00 per week.
During the pendency of this action, the defendant cashed in a Prudential life insurance policy on his life with a cash value of $20,879.59 in March of 1999. (Defendant's Exhibit M.) The parties spent a substantial amount of time in presenting evidence as to what bills and/or expenses were paid by the defendant with the monies obtained from said insurance policy cancellation. The plaintiff contended that said monies were used to pay a Visa bill, repay his sister for money advanced to him for rent for January, February and March, 1999, furniture for his apartment, taxes on his car, payments on his Citibank account and attorney's fees. The defendant claims that the life insurance policy was cashed and monies used by the plaintiff for his personal needs CT Page 1747 and pleasures and those of his girlfriend without substantial contribution to family obligations and/or mortgage payments on the family residence. The court hereby finds that the defendant violated the automatic orders by cashing in the life insurance policy without the permission of his wife in writing and/or an order of the court and that he further used a substantial portion of said money for expenses other than customary and usual household expenses and/or reasonable attorney's fees in connection with the action.
While the court further finds that the breakdown of the marriage was not caused by the extramarital relationship of the plaintiff and his girlfriend. The marriage was already dead by the time the plaintiff found someone of interest to him. The court, further finds that plaintiff failed to make mortgage when due after he left the family residence. He left his wife financially destitute and dependant upon her children of majority to pay for and maintain her household.
The true character or lack thereof of the plaintiff is brought to light by his actions in cashing in the life insurance policy in violation of the court's automatic orders, and his blatant refusal to pay alimony and current child support. While the court finds that the plaintiff was a hardworking husband and father, employed in two jobs during the substantial portion of the marriage to make ends meet, his actions in the past year evidence an attempt to denude his wife of her personal financial security. He further dissipated any assets he could reasonably liquidate without tax penalty during the pendency of this action. The trial judge is the sole arbiter of the credibility of the witnesses.Christine v. Eager, 129 Conn. 62, (1942).
The court has considered all of the statutory factors concerning custody and visitation as set out in Connecticut General Statutes § 46b-56, 46b-56a and 46b-59. The court has considered all of the factors in Connecticut General Statutes § 46b-81, 46b-82, 46b-83,46b-89 and 46b-62 and all other pertinent statutes, tax implications, earnings and earning capacity differential, causes for the breakdown of the marriage and consequences of the financial awards set forth below. The court further finds that all of the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered that: CT Page 1748
1. Custody. The plaintiff and the defendant shall have joint legal custody of the minor child, Betsaida Matos born February 16, 1982. The principal place of residence of the minor child shall be with the defendant mother.
2. Visitation. The plaintiff shall have reasonable rights of visitation with said minor child with 48 hours notice to the defendant.
3. Child Support. The plaintiff shall pay to the defendant the sum of $86.00 per week child support effective January 18, 2000. Said sum is computed with an imputed earning capacity to the defendant in the amount of $365.00 per week and the gross weekly income reflected on the financial affidavit of the plaintiff filed at the November, 1999 hearing. The plaintiff's arrearage of $200.00 for unpaid pendente lite child support has been deducted from plaintiff's net equity secured by the second mortgage deed set out in paragraph five below.
4. Healthcare for the Minor Child. The plaintiff father shall maintain health insurance as available at his place of employment and/or future places of employment for the benefit of the minor child. The mother shall pay the first $100.00 of annual uncovered and/or unreimbursed healthcare expenses for the minor child. Said healthcare expenses shall include but not be limited to any medical, dental, psychological, psychiatric, opthamalogical and/or orthodontic expenses. All uncovered healthcare expenses thereafter shall be paid 50 percent by the plaintiff and 50 percent by the defendant.
5. Real Property. The plaintiff shall transfer to the wife by quitclaim deed all of his right, title and interest in and to the marital premises known as 1130 Silver Lane, East Hartford, Connecticut. If the plaintiff fails to transfer said interest to the real property within 30 days of date of this judgment, the court hereby orders the interest of the plaintiff transferred to the defendant pursuant to the provisions of § 46b-81 of the Connecticut General Statutes. The defendant shall sign a second mortgage deed and a promissory note in the amount of $10,000.00 without interest payable on the first of the occurrence of the following events:
a. death of the wife; CT Page 1749
b. remarriage of the wife;
c. cohabitation with the wife and an unrelated third party as cohabitation is defined in Connecticut General Statutes § 56b-81;
d. sale of the house by the wife; and/or
e. February 1, 2001.
If the defendant fails to pay the plaintiff said sum $10,000.00 minus any arrearage in alimony or child support payments accruing after January 18, 2000 within 30 days of the due date above, said note shall provide interest at the rate of 5% per annum, simple interest. Said division of the equity of the marital home takes into consideration the claim of the defendant to attorneys fees, hairdresser tuition, Betsaida's loan of $5,000.00, use by the plaintiff of the life insurance proceeds, alimony and child support arrearage due as of January 18, 2000 and fault of the parties.
6. Alimony. The plaintiff shall play to the defendant the sum of $150.00 per week as periodic alimony commencing January 18, 2000. The pendente lite arrearage of $2,650.00 has been deducted from the Plaintiff's net equity in the real property secured by the second mortgage deed set out in paragraph five above.
7. Life Insurance. The plaintiff will name the defendant as irrevocable beneficiary on any life insurance provided through his place of employment so long as the defendant has the obligation to pay child support and/or alimony pursuant to the provisions of this judgment.
8. COBRA Insurance. The defendant shall have the right to continue medical insurance through the medical insurance provider and/or carrier at the husband's place of employment as provided by COBRA. The plaintiff is ordered to notify his employer and sign any documents necessary to effectuate COBRA insurance coverage for the defendant. The cost of said COBRA insurance coverage shall be born solely by the defendant.
9. Retirement Benefits. The plaintiff shall transfer to the wife one half of the value of any retirement or annuity benefit plan accrued value to the date of this judgment by way of a Qualified Domestic Relations Order. Said order shall be prepared CT Page 1750 by counsel for the defendant with the assistance of counsel for the plaintiff within 20 days of the date of this judgment.
10. Counsel Fees. Each party shall pay his or her respective counsel fees.
11. Loan from Betsaida. The defendant shall pay the $5,000.00 owed to Desmeris Matos and hold the plaintiff harmless on any liability thereon.
12. Debts. The plaintiff shall pay and hold the defendant harmless from any liability on the Citibank Visa bill and the defendant shall pay and hold the plaintiff harmless from liability on the Master Card, Circuit City, Sears and Filenes bills.
Devine, J.